Eugene R. Licker (EL 0334)
Judith A. Pacitti (JP 5695)
Kirkpatrick & Lockhart, LLP
1251 Avenue of the Americas
New York, New York 10020

Attorneys for Receiver, Michael F. Armstrong

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

MICHAEL F. ARMSTRONG, as Receiver for      :
Ashbury Capital Partners, L.P., Ashbury Capital      :
Management, L.L.C., Apex Investments,      :
and the assets of Mark Yagalla      :         Index No.
     :
                  Plaintiff,      :
    - against -      :

RONALD COLLINS, LORRAINE      :
COLLINS, CAROLYN EGAN, ANDREW      :
COLLINS, DANIEL E. COLLINS, LISA      :
ANN CIACH, AND COLLINS CHIROPRACTIC   :
     :
                Defendants.      :
------------------------------------------------------------- x

## COMPLAINT

Michael F. Armstrong, the receiver appointed by this Court in <u>Securities and Exchange Commission v. Ashbury Capital Partners, L.P., Ashbury Capital Management, L.L.C., And Mark Yagalla</u>, 00 Civ. 7898 (RCC) (the "Enforcement Action"), for Ashbury Capital Partners, L.P., ("Ashbury Fund"), Ashbury Capital Management, L.L.C., ("Ashbury Management"), Apex Investments ("Apex"), and the assets of Mark Yagalla, through his attorneys, Kirkpatrick & Lockhart LLP, for his Complaint alleges, on information and belief as noted and as to all events prior to his appointment on November 9, 2000 as receiver, as follows:

              1.       This is an action by the receiver appointed by the District Court to identify, marshal and secure the assets of an alleged fraudulent scheme (or schemes) devised and

implemented by Mark Yagalla.  Through this action, the receiver seeks to recover, on behalf of the receivership estate, approximately $6 million dollars in funds transferred by Yagalla to the Defendants.  The funds transferred to the Defendants were raised by Yagalla from "investors" who were told that they were investing their funds in one or more investment vehicles managed or controlled by Yagalla.  In reality, according to allegations set forth in the Enforcement Action, the investors were investing in an unlawful scheme operated by Yagalla in violation of the federal securities laws.  This unlawful investment scheme is the subject of the Enforcement Action.

2.      As set forth below, at the time Yagalla was giving millions of dollars to the Defendants, Yagalla, Ashbury Fund, and Ashbury Management were insolvent.  For this and other reasons, these transfers constituted fraudulent transfers made with the intent to hinder, delay, or defraud other investors in Ashbury Fund and Apex.  The receiver thus brings this action to void those fraudulent conveyances and return valuable property to the receivership ultimately for distribution.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 754, 1332, 1367, 1692, as well as the October 27, 2000 Preliminary Injunction Order and the November 9, 2000 Order of this Court appointing a receiver in the Enforcement Action.

4.      Venue is properly laid in this district pursuant to 28 U.S.C. §§ 754, 1692, as well as the October 27, 2000 Preliminary Injunction Order and the November 9, 2000 Order of this Court appointing a Receiver in the Enforcement Action.

**THE DEFENDANTS**

5.　　Ronald Collins, of 1151 Bunkerhill Road, Middletown, Delaware 19709, is a resident of Delaware.

6.　　Lorraine Collins, of 1151 Bunker Hill Road, Middletown, Delaware 19709, is a resident of Delaware.  Lorraine Collins and Ronald Collins are married to each other.

7.　　Carolyn Egan, of 203 Silver Lake Drive, Rehoboth Beach, Delaware 19971, is a resident of Delaware and is the daughter of Ronald Collins.

8.　　Andrew Collins of 555 East State Street, Long Beach, New York 11561, is a resident of Delaware and is the son of Ronald Collins.

9.　　Daniel E. Collins of 8736 Bayside Road, Chesapeake Beach, Maryland 20732, is a resident of Maryland and is the son of Ronald Collins.

10.　　Lisa Ann Ciach of 643 General Weedon Drive, West Chester, Pennsylvania 19382, is a resident of Pennsylvania and is the daughter of Ronald Collins.

11.　　Upon information and belief, Collins Chiropractic is a business entity owned and operated by defendant Daniel E. Collins, and is located at 810 N. Solomons Island Road, Prince Frederick, Maryland 20678.

12.　　The Defendants are referred to herein as "Defendants" or the "Collinses."

**THE ASHBURY SCHEME**

13.　　In or about 1994, Mark Yagalla began trading under the name Apex Investments for the principal purpose of soliciting and managing investments made by individual investors.

14.　　In or about 1998, Yagalla formed Ashbury Fund, supposedly for the purpose of soliciting investments from the public in the form of shares in a limited partnership. Yagalla solicited investments from the public upon the promise that investors reap returns of up

- 3 -

to 80%. Yagalla represented to investors that he would use their money to engage in short-term equity trading and other investments in securities, and that these investments would generate the promised returns.

15.     The Ashbury Fund investors participated by executing limited partnership agreements which memorialized the terms of each investment.

16.     Between January 1, 1994 and October 27, 2000, Yagalla, Apex and Ashbury Fund collected approximately $40 million from investors. In or about May 2000, Yagalla ceased trading activity in Ashbury Fund and Apex and received no revenue. The operations of Ashbury and Apex were entirely dependent on the investments received from investors.

17.     Because Ashbury Fund and Apex were entirely dependent on the funds received from investors, investors could recoup their principal invested and promised returns only if new investors continued to participate in Ashbury Fund and Apex.

18.     Thus, Ashbury Fund and Apex were operated as a Ponzi-type scheme and are indebted to investors in the amount of approximately $40 million. At this time, the liquid assets of Yagalla, Ashbury Fund, and Apex are extremely limited and total well less than $500,000. The receiver has possession of or freeze orders applicable to property with a retail (i.e. cost) value of approximately $6 million, net of mortgages (but subject to significant other liabilities, such as operating costs). Thus, Yagalla, Ashbury Fund, and Apex are now, and on information and belief, have always been, insolvent and were so at the time transfers were made to the Defendants.

## THE DEFENDANTS' PARTICIPATION IN YAGALLA'S SCHEME

19.     Defendants Ronald and Loraine Collins first invested money with Yagalla when he was doing business as Apex Investments.

20.     Defendants Ronald and Lorraine Collins have encouraged others to invest money with Yagalla, first through Apex Investments, and later through Ashbury Fund. Ronald and Lorraine Collins touted Yagalla's investing skill, and raved about the returns their investments with him were receiving. These prospective investors did, in fact, invest in one or more of the Yagalla investment vehicles.

21.     Defendants knew, no later than September and October 2000, that Yagalla had issued bad checks and false wire transfers in response to various requests by the Collinses for funds.

22.     On or about October 4, 2000, Defendant Ronald Collins, knowing that Yagalla's scheme was beginning to unravel, contacted at least one investor, unbidden by the investor. The investor had approached Yagalla and demanded distribution of his investment and accrued but undistributed gain. Collins convinced this investor not to withdraw money, claiming that Yagalla's troubles were behind him.

23.     On information and belief, Ronald Collins contacted the investor referred to in paragraph 22, above, at Yagalla's request in an attempt to avoid the total disintegration of Yagalla's scheme.

24.     Both before and after Ronald Collins convinced the investor not to press his demand for return of his investment, the Collinses obtained distributions from Ashbury and/or Apex totaling millions of dollars. In total, during the period April through October 2000, Defendants received over $6 million in distributions, as follows:

| | |
|---|---|
| Ronald Collins | $2,820,000.00 |
| Lorraine Collins | $100,000.00 |
| Carolyn Egan | $1,223,000.00 |
| Andrew Collins | $750,000.00 |
| Daniel E. Collins | $1,187,500.00 |
| Lisa Ann Ciach | $16,414.00 |
| Collins Chiropractic | $7,500.00 |

25.     At the time that the above transfers were made to Defendants, Yagalla, Ashbury Fund, and Ashbury Management were insolvent.  The Defendants did not provide any valuable consideration for the distribution.  By virtue of the distribution, Defendants obtained an impermissible preference over other investors, whose investments remained at risk with Yagalla.

26.     In making these transfers to the Defendants, Yagalla sought to and did defraud, hinder, and deceive creditors.

27.     At all relevant times, Defendants acted in concert with Yagalla in furthering the fraudulent scheme.

28.     At all relevant times, Defendants possessed and used their inside and special knowledge, insight, understanding of the financial condition of Yagalla and Ashbury Fund and their close and entwined involvement in the operations of Ashbury Fund for their own economic benefit and protection to the detriment and loss of the remaining unsecured creditors.

**The Enforcement Action and Receivership**

29.     In the fall of 2000, Yagalla's scheme began to unravel.  On or about October 12, 2000, Yagalla had a conversation with an individual who, unbeknownst to Yagalla, was an FBI informant.  The conversation was taped.  In the taped conversation, Yagalla admitted that he had engaged in fraud and that he and his entities were insolvent.

30.     On or about October 17, 2000, the Securities and Exchange Commission commenced the Enforcement Action against Yagalla, Ashbury Fund, and Ashbury Management. The SEC alleged that Yagalla, Ashbury Fund and Ashbury Management were engaged in the fraudulent solicitation of investments in violation of the federal securities laws.  The SEC sought permanent injunctive relief, penalties and orders that Yagalla, Ashbury Fund and Ashbury Management disgorge their fraudulently obtained gains and restore to the investors those funds

owed to investors. The complaint in that action is attached hereto as Exhibit A and incorporated herein by reference.

31.     On motion of the SEC, the court temporarily and preliminarily enjoined the operations of Ashbury Fund, Ashbury Management and Yagalla by an order dated October 27, 2000. The SEC's motion and supporting papers filed in the action are incorporated herein by reference. The Court's Preliminary Injunction Order is attached hereto as Exhibit B and incorporated herein by reference.

32.     To date, none of the defendants in the Enforcement Action has answered the complaint or responded in any fashion. Those defendants consented to the imposition of the preliminary injunction. Yagalla has never denied the charges and has indicated a willingness, indeed desire, to cooperate with the receiver by identifying and recovering assets, as soon as his criminal matter is resolved. To date, however, he has not done so and claims to be awaiting resolution of criminal charges against him. None of the defendants in the Enforcement Action are represented by counsel in this action.

33.     By Order dated November 9, 2000 (the "Receivership Order"), the receiver was appointed by the Court and vested with the authority, on behalf of the receivership estate, to "acquire and retain all rights and powers which [Ashbury Fund, Ashbury Management, or Mark Yagalla] . . . have to manage, control, operate and maintain their businesses . . . and to possess, receive, or use income, earnings rents and profits with full power to commence, maintain, defend or participate in legal proceedings, to sue for, collect, receive and take into possession all goods, chattels, rights, general intangibles, choses in action, credits, monies, effects, lands, books and records of account, and other papers . . . with a view to preventing loss, damage, and injury to public investors, and preserving assets and the records of [Ashbury Fund, Ashbury Management and Mark Yagalla] (including each's subsidiaries and affiliates)." The

- 7 -

Receivership Order was reentered without change on January 3, 2001, and an amended

Receivership Order was entered on January 31, 2001.  A copy of the Amended and Restated

Receivership Order is attached hereto as Exhibit C, and is incorporated herein by reference.  The

property constituting the receivership estate is referred to herein as Receivership Property.

34.    Certified copies of the reentered Receivership Order, the Amended

Receivership Order, and the complaint in the Enforcement Proceeding were filed with the United

States District Courts for the districts where the defendants reside.

## COUNT I – FRAUDULENT CONVEYANCE UNDER THE UNIFORM FRAUDULENT TRANSFER ACT – CONSTRUCTIVE FRAUD

35.    The receiver repeats, realleges and incorporates by reference herein each

and every allegation contained in paragraphs 1 through 34 hereof.

36.    During the period April 2000 through October 6, 2000, Defendants

received more than $6 million in cash distributions from Yagalla and/or Ashbury Fund.  None of

the Defendants provided reasonably equivalent value in exchange for any of the transfers.

37.    Throughout the same period, Ashbury Fund, Ashbury Management, Apex

and Yagalla had debts outstanding to scores of unsecured creditors, including those who had

invested in Ashbury Fund and Apex.  At the time the transfers referred to above were made to the

Defendants, Ashbury Fund, Ashbury Management, Apex and Yagalla was engaged or was about

to engage in a business for which their remaining assets were unreasonably small in relation to

the business.

38.    At the time the transfers referred to above were made to the Defendants,

Ashbury Fund, Ashbury Management, Apex and Yagalla intended to incur, or believed or

reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

39.    Yagalla, Ashbury Fund and Apex were insolvent during the period in which the Defendants received these transfers.

40.    Pursuant to the Uniform Fraudulent Transfer Act, the receiver, on behalf of the receivership estate, may avoid the transfer to the Defendants of the property of Yagalla, Ashbury Fund, Ashbury Management, and Apex.  The transferred property, its proceeds, or substitute property of equivalent value constitute receivership property.

41.    The receiver has the right to possession and title to the property transferred to the defendants pursuant to the Receivership Order, as amended.

## COUNT II – FRAUDULENT CONVEYANCE UNDER THE  UNIFORM FRAUDULENT TRANSFER ACT  –  ACTUAL FRAUD

42.    The receiver repeats, realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 41 hereof.

43.    In making transfers to the Defendants, Yagalla intended to and did hinder, delay and defraud the unsecured creditors of Ashbury Fund, Ashbury Management and Apex.

44.    Ronald Collins and/or Lorraine Collins received the transfers from Yagalla with the knowledge that they had not provided Yagalla with reasonably equivalent value in exchange for the transfer and knowledge of and participation in Yagalla's intent to defraud, hinder and delay the unsecured creditors of Ashbury Fund, Ashbury Management, and Apex and cause damage to those entities.

45.    Ronald Collins and/or Lorraine Collins communicated their knowledge of the fraud to the other Defendants (their children), who thereby also were aware of and

- 9 -

participated in Yagalla's intent to defraud, hinder and delay the unsecured creditors of Ashbury Fund, Ashbury Management, and Apex and cause damage to those entities.

46.     The transfers to the Defendants constitute fraudulent transfers. The Defendants provided no consideration for the transfers. There was a close relationship between Yagalla and the recipients of his transfers. Yagalla made these transfers at a time when he, Ashbury Fund, Ashbury Management, and Apex were insolvent. The Defendants knew that Yagalla had been issuing bad checks and false wire transfers. Indeed, the mere existence of a scheme such as that alleged in the Enforcement Action is evidence that Yagalla, Ashbury Fund, Ashbury Management, and Apex actually intended to hinder, delay and defraud their creditors.

47.     Pursuant to the Uniform Fraudulent Transfer Act, the receiver, on behalf of the receivership estate, the transfers to the Defendants of the property of Yagalla, Ashbury Fund, Ashbury Management, and Apex are void. The transferred property, its proceeds, or substitute property of equivalent constitute receivership property.

48.     The receiver has the right to possession and title to the property transferred to the defendants pursuant to the Receivership Order, as amended.

## COUNT III – FRAUDULENT CONVEYANCE UNDER THE UNIFORM FRAUDULENT CONVEYANCE ACT – CONSTRUCTIVE FRAUD

49.     The receiver realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 48 hereof.

50.     The transfers to the Defendants were conveyances within the meaning of the Uniform Fraudulent Conveyance Act in that they were payments of money, assignments, releases, or transfers of tangible or intangible property.

51.     The transfers to the Defendants were made without fair consideration in that the Defendants gave nothing of value in return for the transfers.

- 10 -

52.    The transfers were made by Yagalla, Ashbury Fund and Ashbury Management who were, or thereby were rendered, insolvent.

53.    Pursuant to the Uniform Fraudulent Conveyance Act, the receiver, on behalf of the receivership estate, may avoid the transfer to the Defendants of the property of Yagalla, Ashbury Fund, Ashbury Management, and Apex. The transferred property, its proceeds, or substitute property of equivalent value constitute receivership property.

54.    The receiver has the right to possession and title to the property transferred to the defendants pursuant to the Receivership Order, as amended.

## COUNT IV – FRAUDULENT CONVEYANCE UNIFORM UNDER THE FRAUDULENT CONVEYANCE ACT – ACTUAL FRAUD

55.    The receiver realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 54 hereof.

56.    As set forth above, the transfers to the Defendants were made with the actual intent to hinder, delay, and defraud either present or future creditors, and with the knowing complicity of the Defendants, who knew that Yagalla had been issuing bad checks and false wire transfers.

57.    Pursuant to the Uniform Fraudulent Conveyance Act, the transfers to the Defendants of the property of Yagalla, Ashbury Fund, Ashbury Management, and Apex are void. The transferred property, its proceeds, or substitute property of equivalent value constitute receivership property.

58.    The receiver has the right to possession and title to the property transferred to the defendants pursuant to the Receivership Order, as amended.

## COUNT V – UNJUST ENRICHMENT

59.     The receiver realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 58 hereof.

60.     The Defendants obtained millions of dollars from Yagalla, Ashbury Fund, Ashbury Management or Apex with actual knowledge of those persons' insolvency without having provided a reasonably equivalent value in exchange.  The Defendants obtained these funds and transfers at the expense and to the detriment of the creditors of Yagalla, Ashbury Fund, Ashbury Management, and Apex.  There are insufficient assets available to repay these unsecured creditors.

61.     In obtaining these funds and property without providing Yagalla, Ashbury Fund, Ashbury Management or Apex with a reasonably equivalent value, and in the face of those persons' insolvency, the Defendants unjustly enriched themselves at the expense of Ashbury Fund, Ashbury Management and Apex.

62.     Accordingly, the Defendants should be required to make restitution to the receivership estate of the cash and property they received from Yagalla.

## COUNT VI – CONSTRUCTIVE TRUST

63.     The receiver realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 62 hereof.

64.     The money and other property given by Yagalla to the Defendants, for which they provided no reasonably equivalent exchange of value, were the proceeds of Yagalla's fraudulent conduct.  The Defendants knew or should have known of the fraud and are currently aware that the transfers were the fruit of fraud.  Accordingly, they may not retain a beneficial interest in such property.

65.    The Defendants are therefore deemed constructive trustees for such funds and other property, and equity requires that such funds and other property held in trust by the Defendants for the Ashbury Fund and Apex investors be restored to the receiver so that the receivership estate may begin to satisfy the debts owed to creditors by Ashbury Fund, Ashbury Management, Apex, and Yagalla.

## PRAYER FOR RELIEF

WHEREFORE, the receiver prays this Court to enter an order against Defendants in favor of the receiver:  (1) that the Receiver be granted judgment (a) with regard to Counts I and III, in the amount of profit provided to the Collinses over and above their Apex or Ashbury investments, to be determined at trial but believed to be in excess of $1.5 million and (b) with regard to counts II, IV, V and VI, in the entire amount of the transfers to the Collinses, to be determined at trial but believed to be in excess of $6 million, plus interest from the date of transfer; (2) that the transfer of an amount to be determined at trial but believed to be in excess of $6 to Defendants by Yagalla, Ashbury Fund, Ashbury Management or Apex Investments be avoided; (3) preliminarily and permanently enjoins Defendant from transferring, pledging, encumbering, assigning, hypothecating, or in any way disposing of the transferred assets; and (4) such other relief as the Court shall deem to be appropriate and required by equity and justice.

Dated:  New York, New York
        March 22, 2001

Respectfully submitted,

KIRKPATRICK & LOCKHART LLP

By:    _____

Eugene R. Licker (ER 0334)
Judith A. Pacitti (JP 5695)
KIRKPATRICK & LOCKHART LLP
1251 Avenue of the Americas, 45th Floor
New York, New York  10020
(212) 536-3900
Counsel for Michael F. Armstrong, Receiver

- 13 -